USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/26/2026__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                    :

MARLENE VASQUEZ, *individually and as parent and*   :
*natural guardian of L.C.,*   :
                                    :

                    Plaintiff,   :            24-cv-9029 (LJL)
                                    :

          -v-                 :           OPINION AND ORDER
                                    :

MELISSA AVILES RAMOS, et al.,   :
                                    :

                   Defendants.   :
                                    :
---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Marlene Vasquez ("Plaintiff"), individually and as the parent and natural guardian of L.C., brings this action challenging the decision of a state review officer ("SRO") dismissing her appeal of an impartial hearing officer's ("IHO") denial of her claims for specialized transportation and funding and an independent educational evaluation ("IEE"). The New York City Department of Education ("DOE") and Melissa Aviles-Ramos, in her official capacity as Chancellor of DOE (together with DOE, "Defendants"), and Plaintiff cross-move for summary judgment. For the following reasons, Plaintiff's motion for summary judgment is denied in part and granted in part, and Defendants' cross-motion for summary judgment is granted.

## BACKGROUND

### I.    Statutory and Regulatory Background

Congress enacted the Individuals with Disabilities Education Act ("IDEA") with the goal of ensuring "that all children with disabilities have available to them a free and appropriate public education . . . designed to meet their unique needs . . . and to ensure that the rights of

children with disabilities and the parents of such children are protected."  20 U.S.C. § 1400(d)(1)(A)–(B).  "The IDEA offers federal funds to states that develop plans to assure all children with disabilities residing in each such state a free appropriate public education ["FAPE"]."  *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 223 (2d Cir. 2012) (citations and alterations omitted).  The centerpiece of the IDEA's educational guarantees is the individualized education program ("IEP"), which must be designed to provide a FAPE and which school districts must implement each year for children with disabilities.  *Id.*  An IEP is a "written statement that 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'"  *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507–08 (2d Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)), *opinion amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007).  "The IEP is to be developed jointly by a school official qualified in special education, the child's teacher, the parents or guardian, and, where appropriate, the child."  *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985).

A FAPE is provided where the IEP is (1) "developed in accordance with the procedures laid out in the IDEA," and (2) "reasonably calculated to enable the child to receive educational benefits."  *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014).  The IDEA guarantees each student an "appropriate" education, but not "everything that might be thought desirable by loving parents."  *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir. 1998) (quoting *Tucker v. Bay Shore Union Free Sch. Dist.*, 873 F.2d 563, 567 (2d Cir. 1989)); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 189–90 (1982) (explaining that the IDEA "contains no requirement . . . that States maximize the potential

2

of handicapped children commensurate with the opportunity provided to other children" (internal citations and quotation marks omitted)).

New York State "has assigned responsibility for developing appropriate IEPs to local Committees on Special Education ('CSE'), the members of which are appointed by school boards or the trustees of school districts." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir. 2007). "The CSE is composed of several individuals, including the parents, the student's special education teacher, a school psychologist, a school district representative knowledgeable about the district's resources, a school physician, and a parent representative." *Thomason v. Porter*, 2023 WL 1966207, at *6 (S.D.N.Y. Feb. 13, 2023) (citing N.Y. Educ. Law § 4402(1)(b)(1)(a).

If a New York parent believes an IEP is insufficient under the IDEA or that the child is not being provided a FAPE, the parent "may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district by filing what is known as a due process complaint." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (citation omitted). A parent's filing of the due process complaint triggers a hearing conducted before an IHO appointed by the local board of education. *See M.H.*, 685 F.3d at 224–25. The IHO's decision may be appealed by either party to an SRO, an officer of the New York State Department of Education. *See id.* at 225. Following a decision, the "'party aggrieved' by the findings of the SRO 'shall have the right to bring a civil action' in either state or federal court." *Id.* (quoting 20 U.S.C. § 1415(i)(2)(A)).

## II.    Factual Background

L.C. suffers from a traumatic brain injury that adversely affects her educational abilities and performance. Dkt. No. 1 ("Compl.") ¶ 5. On June 1, 2023, DOE convened a CSE to develop an IEP for L.C. for the 2023–2024 school year. *Id.* ¶ 35. Plaintiff disagreed with the

resulting IEP and self-enrolled L.C. at the International Academy of the Brain ("iBrain") for that school year, where L.C. previously attended for the 2022–2023 school year. *Id.* ¶ 36.  Plaintiff sent DOE the required Ten-Day Notice on June 20, 2023 to inform DOE that she disagreed with the IEP and intended to re-enroll L.C. at iBrain and to seek public funding for the placement. *Id.* ¶ 37.  On November 20 of that year, Plaintiff filed an administrative Due Process Complaint ("DPC") against the New York City DOE alleging that her daughter was not offered a FAPE for the 2023–2024 school year. *Id.* ¶ 38.  That case was designated IHO Case No. 265816. *Id.* ¶ 39.

In a Findings of Facts and Decision ("FOFD") dated April 4, 2024, the IHO determined that DOE had denied L.C. a FAPE and ordered DOE to fund the student's unilateral placement at iBrain for that school year. *Id.* ¶¶ 41–42; *see* R. 16–27.[1]  However, the IHO denied Plaintiff's claims for specialized transportation funding and an IEE, which is an independent neurophysiological evaluation.  Compl. ¶ 42.  As to transportation, the IHO determined that Plaintiff "received the transportation accommodation forms and failed to return them to the DOE for additional transportation accommodations to be appropriately recommended to the student." R. 24.  Further, iBrain had provided a transportation contract to Plaintiff, and Plaintiff "did not research any other transportation providers prior to executing said contract." *Id.*  Neither Plaintiff nor iBrain ever engaged with DOE about whether DOE could provide the requisite transportation services.  And finally, although DOE served a subpoena on the Director of iBrain to testify as to this question, he did not comply. *Id.*  In essence, the IHO found that "the actions of the Director coupled with the failure of the Parent to respond to DOE's transportation accommodation form which would have put DOE on notice as to what type of transportation

---

[1] Citations to the administrative record are paginated using the internal page numbers. *See* Dkt. No. 21.

accommodation they should provide the student, and the fact that the Parent never requested that DOE provide transportation warrants a denial of Parent's request for transportation funding." *Id.* On the IEE, the IHO determined that an IEE had been conducted on February 28, 2022, and that Plaintiff's new request was made for the first time in the DPC and that in that request she did not identify any grounds of disagreement with that prior assessment. *Id.* at 25.

Plaintiff appealed that decision to the New York State Education Department's Office of State Review. The SRO, in Appeal No. 24-193, dismissed the appeal on procedural grounds, citing lack of personal service of the appeal documents on the DOE. Compl. ¶ 47; *see* R. 8–15. The SRO stated that an appeal "must be initiated by timely service of a verified request for review and other supporting documents, if any, upon respondent." R. 12. Plaintiff attempted to effect service only via email, but the district representative had not given consent for service by email. *Id.* at 13. Plaintiff argued that the DOE was not prejudiced by email service because they responded to Plaintiff's request for review in a timely manner. *Id.* at 14. The SRO found, however, that May 14 was "the last day the parent could have served a timely request," and that "the evidence shows that she did not effectuate proper service on this date," so "the request for review remains untimely regardless of when the district actually became aware of the parent's pleading." *Id.*

## PROCEDURAL HISTORY

Plaintiff filed a Complaint on November 25, 2024. Dkt. No. 1. Defendants answered on January 9, 2025. Dkt. No. 11. Plaintiff filed a motion for summary judgment and memorandum of law in support, along with the certified administrative record, on April 28, 2025. Dkt. Nos. 16–18. Defendants submitted a cross motion for summary judgment and accompanying memorandum of law on July 31, 2025. Dkt. Nos. 28–29. Plaintiff submitted her opposition to

the cross motion on August 29, 2025.  Dkt. No. 30.  Defendants filed a reply memorandum of law in support of their cross motion on October 9, 2025.  Dkt. No. 35.

## LEGAL STANDARD

"Although the parties have styled their submissions as motions for summary judgment, 'the procedure is in substance an appeal from an administrative determination, not a summary judgment.'"  *C.U. v. N.Y.C. Dep't of Educ.*, 23 F. Supp. 3d 210, 222 (S.D.N.Y. 2014) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)).  As such, adjudicating an IDEA case at summary judgment "involves more than looking into disputed issues of fact; rather it is a pragmatic procedural mechanism for reviewing administrative decisions."  *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012).  To that end, the court must "engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence."  *Gagliardo*, 489 F.3d at 112; *see* 20 U.S.C. § 1415(i)(2)(C)(i)–(iii).  "The standard of review 'requires a more critical appraisal of the agency's determination than clear-error review but nevertheless falls well short of complete *de novo* review.'"  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (quoting *M.H.*, 685 F.3d at 244).

## DISCUSSION

The parties have moved for summary judgment on three sets of issues.  First, Plaintiff argues that the SRO's dismissal of the appeal for Plaintiff's failure to properly effectuate service was proper.  Second, Plaintiff argues that she otherwise should be excused for failing to exhaust the administrative remedies available.  And third, Plaintiff argues that the IHO erred in findings that L.C. was not entitled to private transportation funding or to a new IEE.  The Court addresses each in turn.

## I.    The SRO's Dismissal of Plaintiff's Appeal on Procedural Grounds

"An SRO's dismissal of an appeal from an IHO's decision, when based on procedural grounds, will not be overturned unless it is arbitrary and capricious." *B.C. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 365 (S.D.N.Y. 2013) (citing *R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d 285, 290 (S.D.N.Y. 2012)).  "The 'arbitrary and capricious' inquiry requires the Court to determine whether the SRO's decision was supported by a consideration of the relevant factors and whether a clear error of judgment occurred." *Id.* (quoting *R.S.*, 899 F. Supp. 2d at 290–91).  "The law of arbitrary and capricious administrative behavior . . . requires consistency in agencies' application of law," and "ultimately . . . is a rule of reasonableness" that safeguards against unpredictability.  *R.S.*, 899 F. Supp. 2d at 291.  If the dismissal based on a failure to serve is sound, the plaintiff has failed to exhaust the administrative remedies available and federal courts have no jurisdiction over the case.  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245–46 (2d Cir. 2008); 20 U.S.C. § 1415(i)(2)(A); *see also Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020) ("[U]nless an exception applies, the exhaustion of administrative remedies under the IDEA is a jurisdictional prerequisite of the statue and . . . a plaintiff's failure to exhaust deprives a court of subject matter jurisdiction over any IDEA claims." (internal citations and quotation marks omitted)).

The applicable regulation is 8 N.Y.C.R.R. § 279.13.  It provides:

> A request for review to a State Review Officer must be served and filed within the timelines specified in section 279.4 of this Part.  A State Review Officer may dismiss sua sponte a late request for review or, in his or her sole discretion, may excuse a failure to timely serve or file a request for review within the time specified for good cause shown.  The reasons for such failure shall be set forth in the request for review.

Section 279.4, in turn, states that: "In the event that a school district is named as a respondent in a request for review, personal service of the request for review upon such school

7

district shall be made by delivering a copy thereof to the district clerk, to a trustee or member of the board of education of such school district, to the superintendent of schools, or to a person who has been designated by the board of education to accept service." 8 N.Y.C.R.R. § 279.4. Notice of the intention to seek review must be served on the respondent "no later than 25 days after the date of the decision of the impartial hearing officer sought to be reviewed." *Id.* § 279.2(b). Further, the actual request for review shall be served "within 40 days after the date of the decision of the impartial hearing officer sought to be reviewed." *Id.* § 279.4(a). When service is complete, the petitioner "shall file . . . proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete." *Id.* § 279.4(e).

The factual record is undisputed. The IHO's decision was issued on April 4, 2024. R. 25. Thus, the 25-day clock to serve the intention to seek review started running that day and expired on April 29, 2024. The 40-day clock to serve the request for review on DOE expired on May 14, 2024. R. 14. It is also undisputed that Joanna LaBoue, an attorney with the Brain Injury Rights Group ("BRIG"), which represents Plaintiff in this action, emailed Jasmyn Allen, a DOE agency attorney, on April 29, 2024 noting that "Parent/Petitioner intends to appeal the IHO's decision to the SRO in the above-references matter." R. 60. In that same email, LaBoue asked: "[W]ill DOE accept electronic service of the Petitioner's RFR [request for review] and related papers?" *Id.* Allen did not respond, nor did anyone else at DOE. LaBoue emailed Allen again on May 14, 2024, attaching the L.C. matter request for review. *Id*. 61. Again, there was no response. Peter Albert, another attorney with BRIG, sent a follow-up email the next day, May 15, to Brian Reimels, another DOE agency attorney, to "make sure that your group received this RFR which was served yesterday." *Id*. 65. Albert responded that "we did not." *Id.*

8

In sum, Plaintiff and Defendant agree about the relevant deadlines and on the fact that DOE never accepted Plaintiff's request for email service.  Generally, without a showing of good cause, the failure to timely serve the respondent is grounds for dismissal.  The SRO's opinion is comprehensive on this point.  She held that "[g]enerally, the failure to comply with the practice requirements of Part 279 of the State regulations, including the failure to properly serve an initiating pleading in a timely manner, may result in the rejection of the submitted documents or the dismissal of a request for review by an SRO." R. 12.  Pursuant to N.Y.C.R.R. § 279.8(a), "[d]ocuments that do not comply with . . . the provisions of section 279.4 . . .  may be rejected in the sole discretion of the State Review Officer."  The SRO walked through the sequence of events leading to the improper service in making her determination that service did not comply with the relevant rule.  Plaintiff's counsel first sent the notice of intent to seek review via email on April 29, 2024, accompanied by the request that the district consent to electronic service.  R. 13.  The DOE representative did not respond.  Plaintiff's counsel emailed again on May 14, 2024, attaching the request for review.  Again, the DOE representative did not respond.  The DOE representative who received those emails testified both that she did not respond and that she did not give consent in any other form on behalf of the district.  *Id.*  "Additionally, an attorney for the parent emailed the district's attorney on May 15, 2024 asking him if he had received the request for review.  The district agency attorney responded the same day stating 'no, we did not.  What is the case number?'" R. 14.  And in that final email exchange, "the district's attorney also did not give consent to accept electronic service." *Id.*  On that basis, she determined that "the district never gave consent for electronic service as an alternative to personal service in this particular matter." *Id.*

9

The SRO also addressed Plaintiff's argument to the contrary that DOE previously consented to substitute service by explaining that "although the parties may have agreed in prior matters to accept alternative electronic service, it does not follow that the parties could then assume for purposes of future appeals between them that electronic service would be automatically acceptable." R. 14.  Finally, the SRO addressed Plaintiff's argument that even if there was no service, the appeal should not be dismissed for lack of prejudice because DOE received the request and was able to respond to it.  The SRO explained that the argument failed because not only did Plaintiff fail to serve the DOE, but their insufficient email service was served on a person who was not designated by the district to accept service, and was done on "the last day the parent could have served a timely request." R. 14.  She accordingly declined to review the IHO's decision and dismissed the appeal.

The SRO's decision was clearly supported by consideration of the relevant facts, regulations, and caselaw.  Under the arbitrary and capricious standard, the Court "may not substitute its judgment for that of the SRO's but must instead determine whether that decision 'was based on a consideration of relevant factors and whether there has been a clear error of judgment.'"  *R.S.*, 899 F. Supp. 2d at 290–91 (quoting *State of N.Y. Dep't of Soc. Servs. V. Shalala*, 21 F.3d 485, 493 (2d Cir. 1994)).  Even where an SRO's decision is "perhaps overly technical," it is not arbitrary where it is not based on a clear error of judgment.  *Id.* at 291; *see also Kelly ex rel. M.K. v. Saratoga Spring City Sch. Dist.*, 2009 WL 3163146, at *4 (N.D.N.Y. Sept. 25, 2009) ("[A]s long as the SRO's finding of untimeliness is not arbitrary and capricious, the court's role is at an end.").

As detailed, the SRO's opinion applied the applicable regulations clearly and correctly.  Cases addressing similar circumstances in this Circuit confirm the reasonableness of the SRO's

conclusion.  In *R.S.*, the plaintiff argued that their failure to timely effect service "constitutes a *de minimis* violation of the regulations that caused prejudice to no one."  899 F. Supp. 2d at 289.  There, the plaintiff "did not serve the school district itself until the day after the deadline."  *Id.* At 288.  The court rejected that argument, determining that the failure to effect service and the subsequent dismissal by the SRO on that basis amounted to "a failure to exhaust administrative remedies" that divested the court of jurisdiction.  *Id.* At 289.  "Were subject-matter jurisdiction a prudential or discretionary doctrine," it continued, the plaintiff's argument "might hold more water."  *Id.*  The court determined too that the SRO's decision was not arbitrary or capricious because the plaintiff there did not cite to any case "in which late service was excused without any showing of good cause whatsoever—a showing the statute explicitly requires."  *Id.* At 291.  In *Kahnimova v. Banks*, the court dismissed a plaintiff's motion for summary judgment on identical grounds, finding that where she failed to timely serve the defendant (having missed the deadline by three days), "plaintiff has failed to exhaust her administrative challenge to the IHO's decision, which ordinarily deprives courts of subject matter jurisdiction over plaintiff's IDEA claims."  2024 WL 2093470, at *3 (S.D.N.Y. May 9, 2024); *see also Avaras v. Clarkstown Cent. Sch. Dist.*, 2019 WL 4600870, at *12 (S.D.N.Y. Sept. 21. 2019) ("the court cannot conclude that [the SRO's] exercise of his discretion to dismiss plaintiff's appeal as untimely was arbitrary and capricious" where service was effectuated nine hours late); *M.G. v. Rye City Sch. Dist.*, 2025 WL 343617, at *4 (S.D.N.Y. Jan. 30, 2025) (similar, four days late over Memorial Day); *Polanco v. Porter*, 2023 WL 2751340, at *4 (S.D.N.Y. Mar. 31, 2023) (similar, seven days late).

Plaintiff cites to *J.E. v. Chappaqua Cent. Sch. Dist.*, but that case proves Defendants' point; there, the court specifically contrasted "noncompliance with formatting requirements," which it found was a "mere technicalit[y]," with "the failure to timely file an appeal," which

"[c]ourts in this Circuit have generally" found to "be deemed a failure to exhaust administrative remedies." 2015 WL 4934535, at *4 (S.D.N.Y. Aug. 17, 2015) (citations omitted). The failure to timely serve Defendants is analogous to the failure to timely file an appeal, not to noncompliance with formatting requirements. Plaintiff's citation to *Killloran v. Westhampton Beach UFSD*, 2020 WL 4740498 (E.D.N.Y. June 24, 2020), is similarly unhelpful to her position. In that case, the court held that "[w]hereas courts in this Circuit have deemed plaintiffs' procedural errors, 'such as failure to timely serve or file a petition for SRO review[,]' a failure to exhaust administrative remedies, procedural violations of 'form requirements' do not similarly constitute an exhaustion failure." *Id.* at *5. The court specifically differentiated between the failure to timely serve, as here, from other procedural violations. *Id.*

Plaintiff nevertheless posits that her failure to serve the DOE is "actually a procedural defect that can be easily cured." Dkt. No. 18 at 10. She argues that this is so because DOE received actual notice and effectively represented the interest of the school district in the appeal—DOE put in both an answer, R. 49–59, and two declarations, R. 62–63, 68–69, in response to Plaintiff's request for review. This echoes her similar argument that the SRO's dismissal of the appeal was arbitrary because there was no prejudice. However, there is a difference between service of process and actual notice. The two are not equivalent. *Cf. Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). And the regulations do not contain an exception to the service rules for lack of prejudice.[2]

---

[2] In her reply brief, Plaintiff points to a prior decision by SRO Hague in which she determined that where a plaintiff had not timely served the notice of intention to seek review, but did timely file an amended request for review, that the "district has not demonstrated any prejudice." There, she exercised her "discretion" and accepted the amended request for review. SRO Decision 24-083. That case is distinct on its facts, as Plaintiff did not timely serve the request for review.

Plaintiff argues at summary judgment that the failure to serve Defendants should nevertheless be excused because an SRO, in their sole discretion, "may excuse a failure to timely serve or file a request for review within the time specified for good cause shown." N.Y.C.R.R. § 279.13. However, "[t]he reasons for such failure shall be set forth in the request for review." *Id.* Plaintiff did not raise the failure to serve at all in her request for review. R. 38–46. In her reply, Plaintiff argued that the appeal should not be dismissed for lack of proper service, but still did not make a good-cause argument there. R. 71–72. Because Plaintiff made no good-cause argument, the SRO did not address good cause in her decision, and her failure to do so cannot be deemed arbitrary and capricious. *See Keramaty ex rel. R.M.K. v. Arlington Cent. Sch. Dist.*, 2006 WL 8461781, at *14 (S.D.N.Y. Jan. 25, 2006) ("While plaintiff now presents the court with an explanation for her delay in filing, having failed to do so in proceedings before the SRO, it cannot be said that the SRO erred in dismissing the petition as untimely."); *Davis v. Carranza*, 2021 WL 964820, at *13 (S.D.N.Y. Mar. 15, 2021) ("A party must present an issue in a request for review for it to be properly raised to the SRO.").

Even if the Court were to consider Plaintiff's arguments on good cause, they are plainly inadequate. "Generally, good cause for late filing would be something like postal service error, or, in other words, an event over which the filing party had no control." *B.C.*, 971 F. Supp. 2d at 367 (quoting *T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 441 (W.D.N.Y. 2012)). "[A]ttorney error . . . do[es] not comprise good cause." *T.W.*, 891 F. Supp. 2d at 441; *see also Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) ("An attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." (quoting *E. Refractories v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999))). Plaintiff argues that DOE contributed to any error by not responding to their request for email

13

service, but that argument is irrelevant.  In the absence of consent for email service, it is unambiguous that Plaintiff was required to effectuate personal service to appeal the IHO's decision.  The fact that they had previously asked and received consent to serve by email from DOE demonstrates their own knowledge of the importance of that consent.  Nor can it be true that counsel familiar with IDEA litigation would need an express warning from the administrative body that they were required to follow mandatory procedures—this would undermine the procedures themselves.

**II.      Plaintiff's Appeal Is Subject to the Exhaustion Requirement**

In the alternative, Plaintiff argues that her appeal was not subject to the exhaustion requirements elaborated above.  "The exhaustion requirement 'allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.'"  *J.E.*, 2015 WL 4934535, at \*5 (quoting *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir.2002)).  The Second Circuit has clarified, though, that the exhaustion requirement "is 'not an inflexible rule.'"  *Murphy v. Arlington Cent. Sch. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (quoting *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987)).  "Rather, Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."  *Id.*  "The burden of proving the applicability of one of these exceptions falls on the party seeking to avoid exhaustion."  *Id.* (citing *Polera v. Bd. of Educ.*, 288 F.3d 478, 488 n.8 (2d Cir.2002)).

14

Plaintiff argues that this case fits under the second exemption—that the DOE has a practice relevant to her appeal that is "contrary to the law." "The rationale behind this exception is that while the administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or alter existing ones." *King v. Pine Plains Cent. Sch. Dist.*, 918 F. Supp. 772, 781 (S.D.N.Y. 1996). "Exhaustion thus is not required 'where the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process,' because the hearing officers are powerless to remedy an illegal policy or practice of general applicability." *Mrs. M. v. Bridgeport Bd. of Educ.*, 96 F. Supp. 2d 124, 130 (D. Conn. 2000) (quoting *J.G. v. Board of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447 (2d Cir.1987)). To escape dismissal, the record must contain some factual evidence "from which the Court might infer that [Plaintiff's] experience is representative of an endemic problem" and not merely "a plaintiff-specific dispute . . . which is routinely and properly resolved through the administrative process." *D.F. v. N.Y.C. Dep't of Educ.*, 2025 WL 1425752, at *9 (S.D.N.Y. May 16, 2025) (citations and internal quotation marks omitted).

Plaintiff has not met this high bar. She points to several portions of a NYC DOE document titled "Requesting OPT Transportation Services," which details "instructions for all schools." *See* Dkt. No. 18 at 14–18; https://infohub.nyced.org/docs/default-source/default-document-library/requesting-opt-transportation-services-guide-english.pdf. The cited provisions concern when a school must submit a certificate of occupancy and standards regarding the school's curriculum. *Id.* Plaintiff does not explain how these instructions to schools could have impacted the SRO's decision on appeal. Moreover, the IHO specifically determined that Plaintiff was not entitled to transportation costs on the entirely distinct basis that the parents and

15

school declined to engage at all with DOE or the possibility that DOE could provide adequate transportation services. R. 24. That the OPT Transportation Services document was not relevant to Plaintiff's appeal is evident too because it was not cited or otherwise mentioned in her petition to the IHO or request for review or referenced by the IHO in the FOFD.

### III.    Plaintiff's Remaining Claims

Because the Court has determined that the SRO's decision to dismiss Plaintiff's request for review was not arbitrary and capricious, and because Plaintiff has not otherwise shown that she is exempt from the requirements of administrative exhaustion, the Court has no jurisdiction to consider her claims on the merits. *See Khanimova*, 2024 WL 2093470, at *4 ("The Court therefore does not have subject-matter jurisdiction due to Khanimova's failure to file a timely appeal.").

### IV.    Attorneys' Fees

Plaintiffs in IDEA cases are entitled to attorneys' fees if they are the prevailing party in the underlying administrative action. 42 U.S.C. § 1988(b); 20 U.S.C. § 1415(i)(3)(B). "Plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Student X v. N.Y.C. Dep't of Educ.*, 2008 WL 4890440, at *27 (E.D.N.Y. Oct. 30, 2008) (citations omitted); *see D.S. v. N.Y.C. Dep't of Educ.*, 2024 WL 2159785, at *3 (S.D.N.Y. Apr. 29, 2024). Plaintiff here was successful in front of the IHO, who ordered DOE to directly fund the student's placement at iBrain for the 2023–2024 school year in the amount of $298,596.60. R. 25. Defendant does not respond to Plaintiff's request for fees arising from the administrative proceeding. Plaintiff is therefore entitled to attorneys' fees in relation to the proceedings before the IHO. Plaintiff is not entitled to attorneys' fees for the instant federal action, in which she has not prevailed.

16

## CONCLUSION

Plaintiff's motion for summary judgment is DENIED in part and GRANTED in part, and

Defendants' cross-motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 17 and 28.


SO ORDERED.

Dated: January 26, 2026
     New York, New York

                         LEWIS J. LIMAN
                  United States District Judge

17